UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DOCTOR'S ASSOCIATES, INC., | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:17-CV-2126 (JCH) |
| v. | : | |
| | : | |
| AZIZ RAHIMZADEH, | : | APRIL 9, 2018 |
| Defendant. | : | |

**RULING RE: PETITION TO COMPEL ARBITRATION (DOC. NO. 1)**

This case comes before the court pursuant to a Petition to Compel Arbitration filed by the plaintiff, Doctor's Associates, Inc. ("DAI"). See Petition to Compel Arbitration ("Petition") (Doc. No. 1). DAI is the franchisor of Subway sandwich shops in the United States. See id. at 2. The defendant, Aziz Rahimzadeh ("Rahimzadeh"), was a Subway franchisee. See id. at ¶ 6. Pursuant to the Federal Arbitration Act ("FAA"), title 9 section 4 of the United States Code, DAI moves to compel arbitration of claims that Rahimzadeh has raised in Michigan state court against DAI and an independent contractor with DAI, Development Agent Nikolaos Moschouris (the "DA"). See generally id. Rahimzadeh opposes DAI's Petition. See generally Memorandum in Opposition to Plaintiff's Petition to Compel Arbitration ("Opposition") (Doc. No. 18).

For the following reasons, DAI's Petition to Compel Arbitration (Doc. No. 1) is granted.

**I.  FACTUAL BACKGROUND**

Rahimzadeh entered into a franchise agreement with DAI to operate Subway franchise #25334 on or about May 28, 2015. See Petition at ¶ 6; Exh. 1, Petition ("Franchise Agreement") (Doc. No. 1-1). The Franchise Agreement contains provisions governing "Relocation of the Restaurant," "Termination and Expiration Provisions," and

1

"Transfer and Assignment of the Restaurant." See Franchise Agreement at ¶¶ 6, 8. The Franchise Agreement also incorporates DAI's "Operation's Manual." Id. at ¶ 5(b)(ii) ("The Operations Manual, as amended, is intended to further the purposes of this Agreement and is specifically incorporated into this Agreement.").

The Franchise Agreement also contains an arbitration clause, which provides that "[a]ny dispute, controversy or claim arising out of or relating to this Agreement or the breach thereof will be settled by arbitration." Id. at ¶ 10(a). The arbitration clause further provides, "The parties agree that Bridgeport, Connecticut, will be the site for arbitration." Id. at ¶ 10(b). In addition, the arbitration clause provides that the intended beneficiaries of the arbitration clause include DAI's "employees, agents and representatives" and that "[a]ny disputes concerning the enforceability or scope of the arbitration clause will be resolved pursuant to the [FAA]." Id. at ¶ 10(d), (f).

In 2017, DAI initiated arbitration proceedings against Rahimzadeh seeking termination of the Franchise Agreement. See Petition at ¶ 14. Rahimzadeh did not participate in the arbitration and, on October 10, 2017, the arbitrator rendered a final award in favor of DAI. See id.; Exh. 2, Petition (Doc. No. 1-2). On or about October 31, 2017, Rahimzadeh initiated a lawsuit against DAI and the DA in Michigan state court (the "Michigan Lawsuit"). See id. at ¶ 15; Exh. 3, Petition (Doc. No. 1-3). In his Complaint in the Michigan Lawsuit, Rahimzadeh seeks declaratory relief that the arbitration clause in the Franchise Agreement is not enforceable; damages for breach of the Franchise Agreement, unjust enrichment, tortious interference, and fraud; and specific performance of the Franchise Agreement and the terms of the Operations

Manual.  See generally Exh. 2, Petition.  He alleges damages of "no less than $25,000." Id. at 12.

## II.     DISCUSSION

The FAA provides that a district court shall compel arbitration if a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" moves the court for an order compelling arbitration so long as the court is satisfied, after hearing the parties, "that the making of the agreement for arbitration or the failure to comply therewith is not in issue."  9 U.S.C. § 4. The Second Circuit has held that, "if the [arbitration] clause is 'broad,'" the district court "should compel arbitration, and permit the arbitrator to decide whether the dispute falls within the clause."  Prudential Lines, Inc. v. Exxon Corp., 704 F.2d 59, 64 (2d Cir. 1983).

Here, the arbitration clause in the Franchise Agreement, which states, "Any dispute, controversy or claim arising out of or relating to this Agreement or the breach thereof will be settled by arbitration" is a broad clause.  Franchise Agreement at ¶ 10(a); see Collins & Aikman Prods. Co. v. Building Sys., Inc., 58 F.3d 16, 20 (2d Cir. 1995) (describing the language "[a]ny claim or controversy arising out of or relating to th[e] agreement" as "the paradigm of a broad clause"); see also Doctor's Assocs., Inc. v. Quinn, 42 F. Supp. 2d 184, 186 (D. Conn. 1999) ("The clause at issue here, submitting to arbitration 'any controversy or claim arising out of or relating to this Agreement or the breach thereof,' is a broad arbitration clause.").  The broad language of the Franchise Agreement creates a presumption of arbitrability of matters that are "somehow connected to the main agreement that contains the arbitration clause."  Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224–25 (2d Cir. 2001) ("When parties use expansive language in drafting an arbitration clause, presumably

3

they intend all issues that 'touch matters' within the main agreement to be arbitrated
. . . .").

Rahimzadeh does not dispute that he is a party to the Franchise Agreement, or that the Franchise Agreement contains a broad arbitration clause.  Instead, he raises the following arguments why this court should deny DAI's Petition: (1) this court lacks jurisdiction to compel arbitration, Opposition at 4–5; (2) the agreement to arbitrate in Connecticut is void pursuant to Michigan franchise law, id. at 3–4, 5; and (3) Rahimzadeh is not in violation of the arbitration agreement because his claims in the Michigan Lawsuit do not arise out of the Franchise Agreement, id. at 5–6.

The court addresses each argument in turn.

A.   Diversity Jurisdiction

DAI asserts that this court has diversity jurisdiction over its Petition because the parties are citizens of different states and the amount in controversy exceeds $75,000.  See Petition at ¶ 4.  Rahimzadeh does not dispute that the parties are citizens of different states.  See Opposition at 4.  However, Rahimzadeh argues that the amount in controversy requirement has not been satisfied because Rahimzadeh's Complaint in the Michigan Lawsuit alleges only that the damages are "not less than $25,000."  Id.

"A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount."  Scherer v. Equitable Life Assurance Soc'y of U.S., 347 F.3d 394, 397 (2d Cir. 2003) (internal quotation marks omitted) (quoting Tongkook Am. Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994).  However, this "burden is hardly onerous" because courts "recognize 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.'"

4

Scherer, 347 F.3d at 397 (quoting Wolde-Meskel v. Vocational Instruction Project Cmty. Servs. Inc., 166 F.3d 59, 63 (2d Cir. 1999)). In order to overcome this presumption, Rahimzadeh must show "'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." Id. (quoting Wolde-Meskel, 166 F.3d at 63).

In support of its position that the amount-in-controversy requirement is satisfied, DAI asserts that Rahimzadeh paid $87,000 to purchase his franchise in 2015. Petition at ¶¶ 6, 16 ("Based on the relief requested in the Michigan Complaint and the fact that Contract Price was $87,000, it is clear that the Michigan Complaint seeks more than $75,000 in damages."). Rahimzadeh does not dispute that factual assertion or offer any argument or authority supporting his position that the amount-in-controversy requirement has not been met. Because Rahimzadeh has come forward with neither argument nor factual allegations beyond the fact that his Complaint in the Michigan Lawsuit alleges damages "not less than $25,000," Opposition at 4, the court concludes that he has not met the "high bar" the Second Circuit has set for overcoming the presumption that the face of the Complaint is a good faith representation of the amount in controversy, Scherer, 347 F.3d at 397. Therefore, DAI has adequately pled that the amount in controversy requirement is satisfied.

B. Governing Law

Rahimzadeh asserts that paragraph 13 of the Franchise Agreement, the "Governing Law" provision, dictates that Michigan franchise law governs the Franchise Agreement. Paragraph 13 provides, in pertinent part, as follows:

> This Agreement will be governed by and construed in accordance with the substantive laws of the State of Connecticut, without reference to its conflicts of law, except as may otherwise be provided in this Agreement. The parties agree that any franchise law or business opportunity law of

5

> the State of Connecticut now in effect or adopted or amended after the date of this Agreement will not apply to franchises located outside of Connecticut.

Franchise Agreement at ¶ 13. Based on this language, Rahimzadeh asserts, "The only reasonable interpretation of this provision is that the law of the state where the franchise is located controls." Opposition at 4. He then asserts that Michigan Franchise Investment Law, Michigan Compiled Laws section 445.1501 et seq, dictates that "[a] provision requiring that arbitration or litigation be conducted outside [Michigan]" is "void and unenforceable." M.C.L. § 445.1527(f).

Rahimzadeh fails to acknowledge, however, that the parties expressly agreed not to apply provisions like the Michigan Franchise Investment Law in question. Paragraph 10 of the Franchise Agreement, the arbitration clause, states:

> Any disputes concerning the enforceability or scope of the arbitration clause will be resolved pursuant to the [FAA], and the parties agree that the FAA preempts any state law restrictions (including the site of the arbitration) on the enforcement of the arbitration clause in this Agreement. The parties agree to waive any right to disclaim or contest this pre-dispute arbitration agreement.

Franchise Agreement at ¶ 10(f). The parties agreed that the FAA would govern the arbitration provision and expressly precluded the argument that Rahimzadeh raises with respect to the site of the arbitration. To the extent that paragraph 13 is inconsistent with paragraph 10, the specific language of paragraph 10 trumps the general language in paragraph 13. See, e.g., Aramony v. United Way of America, 254 F.3d 403, 413 (2d Cir. 2001) ("[I]t is a fundamental rule of contract construction that 'specific terms and exact terms are given greater weight than general language.'") (quoting Restatement (Second) of Contracts § 203(c)(1981)). In light of the parties' agreement that the FAA governs the arbitration clause and preempts state law restricting the site of arbitrations,

the court concludes that Michigan Compiled Laws section 445.1527(f) does not govern the arbitration clause at issue here and is not, therefore, a bar to DAI's pending Motion to Compel Arbitration.

### C. Scope of Arbitration Agreement

The final category of argument raised by Rahimzadeh relates to the subject matter of the claims that he has raised in the Michigan Lawsuit. Rahimzadeh argues that his claims arise "from the Operations Manual imposed by [DAI] against [Rahimzadeh]" and "actions outside the scope of any agreement between and amongst the [DAI and Rahimzadeh] and [DAI]'s independent contractor, [the DA], in addition to claims arising from the Franchise Agreement." Opposition at 1. He also argues that his claims against the DA in the Michigan Lawsuit are not barred by the arbitration clause because the Franchise Agreement "only bars actions against agents where such claims arise out of the Franchise Agreement—not the Operations Manual." Id. at 6.

DAI raises several substantive challenges to this characterization, including arguing that the Franchise Agreement incorporates the Operations Manual in full and, therefore, disputes arising out of the Operations Manual also arise out of the Franchise Agreement. See Plaintiff's Reply in Further Support of Its Motion to Compel Arbitration (Doc. No. 19) at 7–9. However, the court concludes that it lacks the authority to reach the question of whether Rahimzadeh's claims in the Michigan Lawsuit arise out of the Franchise Agreement because the parties have expressly delegated that determination to the arbitrator.

The question of whether a dispute is arbitrable depends on "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." In re Am. Exp.

Fin. Advisors Sec. Litig., 672 F.3d 113, 128 (2d Cir. 2011). In the absence of any agreement dictating otherwise, the district court decides these questions of arbitrability, because "the general presumption is that the issue of arbitrability should be resolved by the courts." Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran, 445 F.3d 121, 125 (2d Cir. 2006).

However, "the issue of arbitrability may [ ] be referred to the arbitrator if there is clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." Contec Corp. v. Remote Sol. Co., 398 F.3d 205, 208 (2d Cir. 2005) (internal quotation marks omitted); see also Alliance Bernstein, 445 F.3d at 125. As the Supreme Court has explained,

> [A] delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement. [The Supreme Court has] recognized that parties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. . . . An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other. The additional agreement is valid under § 2 'save upon such grounds as exist at law or in equity for the revocation of any contract,' and federal courts can enforce the agreement by . . . compelling arbitration under § 4.

Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 68–70 (2010) (internal quotation marks and citations omitted).

Here, the parties have agreed that arbitrability is an issue for the arbitrator, in a delegation provision. See Franchise Agreement at ¶ 10(f). As aforementioned, the delegation provision states, "[a]ny disputes concerning the enforceability or scope of the

8

arbitration clause shall be resolved pursuant to the [FAA]." Id. (emphasis added). In light of this express provision delegating questions of scope to the arbitrator, the court concludes this argument by Rahimzadeh—that the claims he alleges in the Michigan Lawsuit are not within the scope of the arbitration agreement—is a question for the arbitrator, not this court, to decide. As claims against agents of DAI arising out of the Franchise Agreement are also subject to the arbitration provision, the court concludes that the delegation provision applies with equal force to Rahimzadeh's claims in the Michigan Lawsuit as alleged against the DA. See id. ("You agree our intended beneficiaries of the arbitration clause including our . . . agents . . . will be neither liable nor named as a party in any arbitration or litigation proceeding commenced by you where the claim arises out of or relates to this Agreement.").

In sum, the court concludes that Rahimzadeh's argument that DAI's Petition should be denied because the claims raised in the Michigan Lawsuit do not arise under the Franchise Agreement is a question that Rahimzadeh and DAI delegated to the arbitrator to decide. It is not, therefore, a basis upon which this court can deny DAI's Motion to Compel Arbitration.

### III. CONCLUSION

For the reasons stated above, the Petition to Compel Arbitration (Doc. No. 1) is **GRANTED**. The Clerk is directed to close this case.

**SO ORDERED**.

Dated this 9th day of April 2018 at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge